IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ELIZABETH CURTIS, ) | |
| ) | |
| Petitioner, ) | Case No. CV 07-00391-S-LMB |
| ) | |
| v. ) | |
| ) | **MEMORANDUM DECISION** |
| COMMISSIONER, SOCIAL SECURITY ) | **AND ORDER** |
| ADMINISTRATION, ) | |
| ) | |
| Respondent. ) | |
| _____) | |

Currently pending before the Court is Elizabeth Curtis's Petition for Review of the final decision of the Commissioner of Social Security (Docket No. 1) denying her claim for Supplemental Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 301, *et seq*. The Court has jurisdiction over this action under 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c). Having carefully reviewed the record, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

**I.**

**ADMINISTRATIVE PROCEEDINGS**

On June 30, 2004, Curtis protectively applied for supplemental security income under Title XVI (AR 46-48), alleging disability beginning August 22, 2002, due to back problems, knee problems, and carpel tunnel in both hands (AR 57). Curtis's applications were denied initially on September 14, 2004 (AR 29), and again upon reconsideration on November 23, 2004 (AR 35).

**MEMORANDUM DECISION AND ORDER - 1**

On January 28, 2005, Curtis filed a request for a hearing before an Administrative Law Judge ("ALJ"). (AR 40.) The ALJ held a hearing in Boise on March 24, 2006, at which time Curtis, proceeding *pro se*, appeared and testified. (AR 324-343, 350, 353-356.) Also testifying was Roseann Moriarty, a friend of Curtis (AR 343-348), and Anne Aastum, a vocational expert ("VE") (AR 348-353).

A.  **Curtis's Testimony**

At the hearing, Curtis testified that she was unable to work because two discs in her back are bad, she has arthritis, and it is very hard for her to sit or stand for any length of time. (AR 326.) She had back surgery in 1989 and was able to work after that for a period of time, but was then let go from her job because the work—cleaning—was causing pain in her back. (*Id.*) She later had two surgeries on her neck, and carpal tunnel release on both wrists. (AR 327.) All together, she has had nine surgeries, with the last one in October 2004 when she had one knee replaced. (AR 332-333.)

She lives in her grandmother's home with her grandmother and her two daughters (one who is twenty-one years of age and one who is ten years of age). (AR 325.) She does not have a driver's license because it expired, she does not own a car, and she hasn't driven a car since the previous year. (AR 329.) She gets out of the house for about an hour each day to do things such as shopping, picking up her daughter, and going to counseling. (AR 330.)

She is going to counseling for depression. (*Id.*) She went to a psychiatrist once about eight months prior, and has been going to counseling twice a week for about eight months. (*Id.*) She was not prescribed any medication by the psychiatrist because she was already on depression medication that had been prescribed by another doctor. (AR 330-331.)

**MEMORANDUM DECISION AND ORDER - 2**

She has not pursued vocational rehabilitation because she cannot sit or stand for long periods of time and she is in constant pain. (AR 331.) Her arthritis also was really hurting at the time of the hearing due to the cold temperatures. (*Id.*)

It is a struggle for Curtis to do anything. (AR 342.) Her grandmother has Alzheimer's and dementia and it is getting very hard for Curtis to take care of her. (AR 342.) Curtis has been taking care of her grandmother for almost two years, on a 24/7 basis. (*Id.*) Curtis does all of the cooking. (*Id.*) Curtis and her oldest daughter help the grandmother bathe and get up if she has fallen. (*Id.*) Curtis needs the help of her oldest daughter in lifting her grandmother and helping her get in and out of the bath tub because Curtis cannot do it on her own. (AR 342-43.) Curtis spends from about 8:00 a.m. until about 1:00 a.m. taking care of her family. (AR 343.)

Curtis takes Vicodin for pain, but cannot take it very often because it makes her fall asleep. (AR 347.) She uses it at least once a week when she is "really hurting enough that" she cannot move, usually after she vacuums the house. (*Id.*) Curtis also suffers from diabetes, and is on multiple medications and insulin for that. (*Id.*) She was diagnosed with diabetes in 2005 and they are still trying to get it stabilized. (AR 347-348.)

The last job Curtis had, about ten years previous, was as a semiconductor assembler. (AR 349-350.) In that position, she had the option of standing or sitting, and she would stand for about three hours of an eight hour day, and sit for the remaining hours. (*Id.*) She cannot return to that job because of the standing and sitting required. (AR 350, 351.) It is "really hard" for her to either sit or stand for any length of time, and going back to work as a semiconductor assembler would require a lot more "stamina" than she currently has. (AR 350-351.)

B.   <u>Moriarty's Testimony</u>

**MEMORANDUM DECISION AND ORDER - 3**

Also testifying at the hearing was Curtis's friend, Roseann Moriarty. Moriarty testified that she sees Curtis a couple of times a week. (AR 344.) She has observed Curtis taking care of her grandmother. (*Id.*) Curtis gets her grandmother food, helps her grandmother to the bathroom, helps her grandmother in the shower, and does anything else her grandmother needs her to do. (AR 344-345.) Curtis has had multiple surgeries, including back, neck, and knee replacement. (AR 345-346.) Curtis goes to counseling twice a week for depression. (AR 346.) Moriarty takes Curtis shopping. (*Id.*) Curtis is physically unable to drive. (*Id.*) It is hard for Curtis to get up and down stairs, and when Curtis and Moriarty are walking, they often have to stop to allow Curtis to rest. (*Id.*)

C.   **Vocational Expert's Testimony**

The ALJ posed two different hypotheticals to the VE. The first hypothetical involved occasional and frequent lifting and/or carrying ten pounds; standing and/or walking at least two hours in an eight-hour day; sitting, with normal breaks, six hours in an eight-hour day; occasionally climbing stairs; never climbing a ladder, rope, or scaffolds; frequent balancing; occasional stooping; frequent kneeling and crawling; occasional crouching; and avoiding concentrated exposure to fumes, vibrations, or hazards. (AR 352.) The VE testified that, with this hypothetical, the claimant would be able to perform her past relevant work as a semiconductor assembler. (*Id.*)

The second hypothetical posed to the VE involved occasional and frequent lifting and/or carrying of less than ten pounds; standing and/or walking at least two hours in an eight-hour workday; periodically alternating sitting and standing to relieve pain or discomfort; limited pushing and/or pulling in both the upper and lower extremities; no climbing, kneeling,

**MEMORANDUM DECISION AND ORDER - 4**

crouching, or crawling; occasional balancing or stooping; and limited exposure to temperature extremes, dust, vibration, humidity/wetness, hazards, fumes, odors, chemicals, and gases. (AR 232-235, 352-353.) The VE testified that, with this second hypothetical, the claimant would still be able to perform the job of semiconductor assembler. (AR 353.) The VE specifically noted that periodically alternating between sitting and standing to relieve discomfort is allowed in the semiconductor assembler job. (*Id.*)

**D.     ALJ's Decision**

On August 16, 2006, the ALJ issued a decision denying Curtis's claim for benefits. (AR 16-22.) The ALJ found that Curtis has the following severe impairments: degenerative disc disease status post cervical fusion, arthritis, and status post right knee replacement. (AR 18.) The ALJ further found that, despite these impairments, Curtis has the residual functional capacity to perform her past relevant work as a semiconductor assembler and was therefore not disabled. (AR 20-22.)

In concluding that Curtis was not disabled, the ALJ rejected Curtis's testimony regarding the severity of the limitations she suffers from her impairments. The ALJ found that while Curtis "experiences some limitations from her impairments, she nonetheless can be found credible only to the extent that she is limited" to the residual functional capacity ("RFC") found by the ALJ. (AR 20, 21.) The ALJ noted that this RFC was consistent with the opinion of Myrna Olson-Fisher, a treating health care professional, and that "there are no other opinions from treating or examining physicians which would indicate the claimant is not capable of at least" that RFC. (AR 22.)

At the time the ALJ issued his decision, he did not have before him, and therefore was

**MEMORANDUM DECISION AND ORDER - 5**

unable to consider, additional evidence that Curtis subsequently submitted to the Appeals Council in support of her claim that she is disabled.

**MEMORANDUM DECISION AND ORDER - 6**

### E. Appeals Council Denial of Review

Curtis retained counsel to represent her and requested Appeals Council review of the ALJ's decision. (AR 12.) Curtis submitted the following additional evidence in support of her request for review: (1) a Residual Functional Capacity ("RFC") questionnaire completed by Myrna Olson-Fisher (AR 292-294); (2) a Mental Residual Functional Capacity ("MRFC") questionnaire completed by Jim Grigg (AR 295-298); and (3) additional medical records (AR 299-317). Curtis requested that the Appeals Council either overturn the ALJ's decision, or remand the matter to the ALJ for reconsideration in light of the additional evidence submitted by Curtis. (AR 318-319.)

The Appeals Council denied Curtis's request for review on August 31, 2007 (AR 6-9), making the ALJ's decision the final decision of the Commissioner of Social Security. *See* 20 C.F.R. § 416.1481. In denying Curtis's request for review, the Appeals Council noted that it had considered the additional evidence submitted by Curtis, but found that the additional evidence did not provide a basis for changing the ALJ's decision. (AR 6-7.) Specifically, the Appeals Council stated: "The additional records submitted with the request for review are after the date of the Administrative Law Judge's decision and provide no evidence of additional objective findings to further limit your activities. The conclusion that you remain able to return to past relevant work remains supported by the evidence of record." (AR 7.)

Having exhausted her administrative remedies, Curtis timely filed this action, arguing (1) that the Commissioner's determination that she is not disabled is not supported by substantial evidence in light of the additional evidence she submitted to the Appeals Council; and (2) that substantial evidence does not support the rejection of her testimony regarding the severity of her

**MEMORANDUM DECISION AND ORDER - 7**

symptoms. *Petitioner's Brief*, pp. 8-15 (Docket No. 13).

## II.

## STANDARD OF REVIEW

The Court reviews the Commissioner's final decision, here the ALJ's decision, under the substantial evidence standard. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). Under this standard, the ALJ's decision must be upheld unless it is based on legal error or is not supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Stout*, 454 F.3d at 1052.

"'Substantial evidence' means more than a scintilla, but less than a preponderance, i.e. such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, in reviewing the ALJ's decision, this court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882.

Further, where, as here, additional evidence was submitted to and considered by the Appeals Council in declining review of the ALJ's decision, the Court considers both the evidence that was before the ALJ and the additional evidence submitted to the Appeals Council in determining whether substantial evidence supports the ALJ's decision. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n.2 (9th Cir. 2007); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

**MEMORANDUM DECISION AND ORDER - 8**

## III.

## SEQUENTIAL PROCESS

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process to determine whether a person is disabled within the meaning of the Act. 20 C.F.R. § 416.920.  The first step in this sequential process requires the ALJ to determine whether the claimant is engaged in substantial gainful activity.  *See* 20 C.F.R. § 416.920(a)(4)(i). If the answer is in the affirmative, disability benefits are denied.  *See* 20 C.F.R. § 416.920(b).  In the present action, the ALJ concluded that Curtis had not engaged in substantial gainful activity at any time relevant to the decision.  (AR 18.)

The second step in the evaluation process requires the ALJ to determine whether the claimant has a medically-severe impairment or combination of impairments.  *See* 20 C.F.R. § 416.920(a)(4)(ii).  Here, the ALJ found that Curtis had the following severe impairments: degenerative disc disease status post cervical fusion, arthritis, and status post right knee replacement.  (AR 18.)

The third step in the process requires the ALJ to determine whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.920(a)(4)(iii).  If the answer is in the affirmative, the claimant is disabled and benefits are awarded.  *See* 20 C.F.R. § 416.920(d).  Here, the ALJ found that Curtis's severe impairments did not meet or equal any of the listed impairments.  (AR 20.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work.  *See* 20 C.F.R. § 416.920(a)(4)(iv).  Here, the ALJ concluded that Curtis was able to

perform her past relevant work as a semiconductor assembler. (AR 22.) The ALJ accordingly concluded that Curtis had not been under a "disability" as defined in the Social Security Act during the relevant time period. (AR 22.)

## IV.

## DISCUSSION

Curtis argues (1) that the ALJ's determination that she is not disabled is not supported by substantial evidence in light of the additional evidence she submitted to the Appeals Council; and (2) that substantial evidence does not support the ALJ's rejection of her testimony regarding the severity of her symptoms.

### A.   Additional Evidence

In determining whether substantial evidence supports the ALJ's determination that Curtis is not disabled, the Court must consider both the evidence that was before the ALJ and the additional evidence submitted by Curtis to the Appeals Council. *See Lingenfelter*, 504 F.3d at 1030 n.2. This additional evidence includes (1) a RFC questionnaire completed by Myrna Olson-Fisher (AR 292-294), and (2) a MRFC questionnaire completed by Jim Grigg (AR 295-298).[1]

#### 1.   RFC Questionnaire

Myrna Olson-Fisher, a Family Nurse Practitioner, completed a RFC questionnaire dated September 28, 2006. (AR 292-294.) In the RFC questionnaire, Olson-Fisher indicated a diagnosis for Curtis of chronic back pain, L4 L5 herniated disc, DM II, mood disorder, and arthritis. (AR 292.) Olson-Fisher indicated that Curtis's impairments had lasted or could be

---

[1] Curtis also submitted additional medical records. (*See* AR 299-317.)

**MEMORANDUM DECISION AND ORDER - 10**

expected to last at least twelve months; that frequently the symptoms associated with the impairments were severe enough to interfere with attention and concentration that would be required for simple, routine work activities; and that Curtis had the limitations and restrictions outlined in the RFC questionnaire since at least October 2004, when Olson-Fisher began treating Curtis. (AR 292-94.)

As far as Curtis's limitations, Olson-Fisher indicated that during an eight-hour workday, Curtis would need to sit in a recliner or lie down for five of the eight hours; that she could sit for fifteen minutes at a time, and stand or walk for fifteen minutes at a time; that she could sit for a total of four hours and stand or walk for a total of three hours, with frequent resting; and that she would need a job that permits shifting between positions and unscheduled breaks (or periods of time spent walking around) every twenty to thirty minutes, with the break lasting at least fifteen minutes. (AR 292-293.) Curtis would be limited to lifting less than ten pounds on an occasional or frequent basis; would be precluded from crouching, but could stoop for 10% of an eight-hour work day; and would be likely to miss work more than four times a month as a result of her impairments or treatments. (AR 293.) Curtis would also be significantly limited in doing repetitive handling and fingering of objects: she would be able to grasp, turn, or twist objects 50% of an eight-hour day with her right hand and 20% of an eight-hour day with her left hand; and would be able to engage in fine manipulation with her fingers for 10% of an eight-hour day with her fingers on her right hand and 60% of the day with her fingers on her left hand. (AR 293.)

Curtis previously had submitted to the ALJ other medical records from Olson-Fisher (*see* AR 276-285), as well as a Medical Source Statement ("MSS") completed by Olson-Fisher (*see*

**MEMORANDUM DECISION AND ORDER - 11**

AR 232-235). The ALJ, in making the determination that Curtis was not disabled, gave significant weight to Olson-Fisher's opinion set forth in the MSS, finding Olson-Fisher's opinion to be consistent with the medical evidence of record, as well as Curtis's reports of her daily activities. (*See* AR 22.)

A comparison of Olson-Fisher's opinion set forth in the MSS and her opinion set forth in the RFC questionnaire demonstrates that, although the opinion set forth in the RFC questionnaire is more detailed, the two opinions, overall, appear to be consistent. For example, both opinions state that Curtis is limited to lifting and/or carrying less than ten pounds; that Curtis can stand and/or walk for a total of at least two hours in an eight-hour work day; that Curtis must periodically alternate between sitting and standing to relieve pain or discomfort; and that Curtis cannot crouch and can only occasionally stoop. (*See* AR 232-234, 292-293.)

The two opinions, viewed together, provide the following limitations: lifting and/or carrying less than ten pounds; sitting in a reclining position or lying down for five hours in an eight-hour work day; standing and/or walking for up to fifteen minutes at one time and for a total of up to three hours in an eight-hour work day (with frequent resting); walking distances limited to the equivalent of two city blocks at one time; sitting for up to fifteen minutes at one time and for a total of up to four hours per day; periodically alternating between sitting and standing to relieve pain or discomfort; fifteen minute breaks or periods of time spent walking around every twenty to thirty minutes; no limitation in ability to reach in all directions; ability to engage in handling and fingering, but limited ability to engage in *repetitive* handling and fingering; occasional balancing and stooping, but no crouching, climbing, kneeling, or crawling; and likelihood of missing work more than four times per month as a result of impairments. (*See* AR

**MEMORANDUM DECISION AND ORDER - 12**

232-234, 292-293.)

It is possible that, given the opportunity to consider Olson-Fisher's opinion set forth in the RFC questionnaire, the ALJ will reject that opinion. However, the Court cannot with confidence find that the ALJ would reject that opinion, and if the ALJ were to accept that opinion, the limitations outlined in that opinion would need to be included in the hypothetical posed to the VE for the purpose of determining whether Curtis is disabled.[2] *See Embrey v. Bowen,* 849 F.2d 418, 423 (9th Cir. 1988) (holding that a VE's testimony can be relied on in determining whether a claimant is disabled only if the testimony is based on a hypothetical that includes all of the claimant's limitations). Those limitations were not, understandably, included in the hypotheticals posed to the VE. Under these circumstances, the Court holds that substantial evidence does not support the ALJ's finding that Curtis is not disabled.

### 2. MRFC Questionnaire

Jim A. Grigg, a Licensed Clinical Professional Counselor, completed a MRFC questionnaire dated September 22, 2006. (AR 295-298.) In the MRFC questionnaire, Grigg indicated a diagnosis for Curtis of depression, outlined various limitations for Curtis, and indicated his belief that Curtis had those limitations to the degree indicated since at least September 2005, when he began treating her. (AR 295-298.)

The outlined limitations include the following marked limitations[3] and extreme

---

[2] The Court wants to make clear that it is expressing no opinion as to whether the ALJ should or should not accept Olson-Fisher's opinion set forth in the RFC questionnaire.

[3] The MRFC questionnaire defines a limitation as being "marked" if it is a serious limitation, making the individual's ability to function in the area severely limited but not precluded. (AR 295.)

**MEMORANDUM DECISION AND ORDER - 13**

limitations[4]:  marked limitation on ability to understand and remember detailed instruction; extreme limitation on ability to maintain attention and concentration for extended periods, such as an eight-hour workday; marked limitation on ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; marked limitation on ability to complete a normal workday without interruptions from psychologically based symptoms; extreme limitation on ability to complete a normal workweek without interruptions from psychologically based symptoms; extreme limitation on attendance at work, with likelihood that Curtis would have four or more absences per month due to psychological impairments; extreme limitation on ability to interact with the general public; marked limitation on ability to accept instructions and respond appropriately to criticism from supervisors; extreme limitation on ability to travel in unfamiliar places or use public transportation; and marked limitation on ability to set realistic goals or make plans independently of others.  (AR 295-296.)  Grigg also rated Curtis as having an extreme impairment in the area of maintaining social functioning; a marked impairment in the area of maintaining concentration, persistence, or pace; and a "residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate."  (AR 297.)

It is possible that, given the opportunity to consider Grigg's opinion, the ALJ will reject that opinion.  However, the Court cannot with confidence find that the ALJ would reject that opinion, and if the ALJ were to accept that opinion, the limitations outlined in that opinion

---

[4] The MRFC questionnaire defines a limitation as "extreme" if the individual has no useful ability to function in the area.

**MEMORANDUM DECISION AND ORDER - 14**

would need to be included in the hypothetical posed to the VE for the purpose of determining whether Curtis is disabled.[5] *See Embrey,* 849 F.2d at 423. Those limitations were not, understandably, included in the hypotheticals posed to the VE. Under these circumstances, the Court holds that substantial evidence does not support the ALJ's finding that Curtis is not disabled.

B.      **Credibility Determination**

To decide whether to accept a claimant's subjective symptom testimony, an ALJ must perform a two-step analysis. In the first step, the ALJ must determine whether the claimant has presented subjective medical evidence of an underlying impairment that could reasonably be expected to produce the symptom alleged. *Lingenfelter*, 504 F.3d at 1035-36. If the claimant meets the first step, the ALJ must move on to the second step and determine whether claimant's subjective testimony is credible. *See id.* at 1036.

Curtis met the first step of this two-step analysis. Curtis submitted medical evidence of underlying impairments that could, as found by the ALJ, reasonably be expected to produce the symptoms Curtis alleged. (*See* AR 21.)

In the second step of the analysis, the ALJ rejected Curtis's testimony regarding the severity of her symptoms. (*See id.*) The ALJ found that although Curtis "experiences some limitations from her impairments, she nonetheless can be found credible only to the extent that she is limited to the above noted residual functional capacity," which was "based on the opinion of [Curtis's] treating medical source . . ."; that while "there are objective findings which support

---

[5] The Court wants to make clear that it is expressing no opinion as to whether the ALJ should or should not accept Grigg's opinion.

**MEMORANDUM DECISION AND ORDER - 15**

degenerative changes in the claimant's lumbar spine and knee, she cannot be found fully credible in her allegations of total disability"; and "that at no point in the file does the claimant describe the level of disability to any . . . treating physician to which she has testified at the hearing." (AR 21.)

In making these findings, the ALJ did not have before him, and therefore did not consider, the opinion of Olson-Fisher set forth in the RFC questionnaire and the opinion of Grigg set forth in the MRFC questionnaire. These opinions more closely line-up with the limitations alleged and testified to by Curtis. And if these opinions were accepted by the ALJ, they would support Curtis's testimony regarding the severity of her limitations. Under these circumstances, the Court holds that substantial evidence does not support the ALJ's reasons for finding Curtis not credible as to the severity of her symptoms.

## V.

## CONCLUSION

The Court concludes that, when the additional evidence submitted by Curtis is taken into account, the Commissioner's determination that Curtis is not disabled within the meaning of the Social Security Act is not supported by substantial evidence in the record. Accordingly, the Court will grant Curtis's request for review and remand this matter for further proceedings.

## VI.

## ORDER

Based on the foregoing, Curtis's request for review is GRANTED. The Commissioner's decision that Curtis is not disabled within the meaning of the Social Security Act is reversed and

**MEMORANDUM DECISION AND ORDER - 16**

this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).



DATED:  **July 14, 2008**.

Honorable Larry M. Boyle
Chief U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**